Filed 4/3/26  P. v. Snider CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085568 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD301817) |
| JONATHAN JAMES SNIDER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Marian F. Gaston and Paula S. Rosenstein, Judges.  Affirmed.

Monica McMillan, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for the Plaintiff and Respondent.

# I.  INTRODUCTION

Jonathan James Snider appeals from the judgment on his convictions for burglary of an inhabited dwelling (Pen. Code, §§ 459, 460, subd. (a))[1] and grand theft (§ 487, subd. (a)).  His appointed appellate counsel filed an opening brief raising no arguable issues pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738.  Snider did not file a supplemental brief on his own behalf.  Our independent review confirms there are no arguable issues on appeal.  We therefore affirm the judgment.

# II.  FACTUAL AND PROCEDURAL BACKGROUND

## A.  Factual Background

This case involves the theft of bicycles from an attached, underground parking garage (the lower garage) of a three-story apartment complex.  The complex's residential units are on the ground level, the second and the third floors. The ground level also includes a lobby and attached parking garage (the upper garage). For vehicles, the garages are effectively separate — they have separate gated exterior entrances that are controlled by separate "clickers," and the garages are not connected such that a vehicle can drive from one to the other.  For pedestrians, the upper garage is accessible through a door in the building lobby; the lower garage is accessible via a code-locked exterior door, an elevator that services the secured building lobby and the residential floors, and a code-locked stairwell from the lobby.  There are bike racks in the lower garage but not the upper garage.

N.L. leased a ground floor apartment unit at the complex.  He offered his unit for rent through a short-term vacation rental website.  Samantha C.

---

[1]     Undesignated statutory references are to the Penal Code.

rented N.L.'s unit from December 15 to December 18, 2023, and extended her stay to December 20. The short-term rental agreement allowed four occupants and required the renter to identify each occupant by name. Samantha identified herself and listed one unnamed guest. Snider was seen on surveillance video coming and going from the apartment with Samantha during her stay. The short-term rental agreement also specified which apartment complex amenities renters may access. Accessible amenities included a barbeque pit, a pet relief area, trash bins in the upper garage, and a designated parking space in the upper garage. The agreement did not mention the lower garage. Short-term renters accessed the upper garage with a clicker provided after check-in.

Around 5:00 a.m. on December 19, 2023 — during the extended portion of Samantha's rental period — the onsite apartment manager noticed that several bikes were missing from the lower garage bike racks. Two of the missing bikes belonged to the manager — a pink Trek bike that she estimated was worth $500, and a copper-brownish Electra Townie bike that she estimated was worth $1,000. The manager noticed that a red Fuji bike belonging to someone else was also taken. Another resident testified that his tan "Lectric" brand bike, which he estimated was worth $800, was also taken.

The apartment manager immediately reported the theft to the police and accessed the complex's surveillance camera footage. This footage showed that at 1:42 a.m. on December 19, 2023, a red Jeep Compass entered the ground level garage and granted access to two other men on foot. The Jeep parked in the parking space assigned to N.L.'s rental unit. The driver of the Jeep met the other men at the locked lobby door and let them into the lobby. The other men took the lobby elevator down to the lower garage, while the

3

driver went to the rental unit. The prosecution argued this footage showed Snider letting in two accomplices.

Surveillance video showed two people in the lower garage tampering with bikes. Footage also showed the driver pushing a red Fuji bike with a black pouch on the front toward the Jeep. The video cuts out and later resumes after the Jeep left. No footage shows the Jeep or the other two men actually leaving the apartment complex with bikes. A detective identified Snider as one of the men in the surveillance footage based on footage showing him coming and going from the short-term rental unit and DMV records identifying him as the owner of the Jeep. At trial, it was stipulated that Snider's codefendant, Dirk Vanloon, was one of the three men seen in the surveillance footage.

The apartment manager provided N.L. the surveillance footage. N.L., in turn, retrieved footage from a motion-activated Ring security camera posted outside the entry to his rental unit. N.L. cross-referenced the apartment complex's footage with his own footage and identified two of the men from the theft as having also visited N.L.'s rental unit during Samantha's stay. N.L. identified Snider as one of those men.

Based on the building surveillance and Ring footage, N.L. contacted Samantha and told her that some "very expensive" bikes were stolen and "we need [them] returned." Surveillance footage recorded around 11:00 p.m. on December 20, 2023, shows Samantha and Snider entering the apartment complex lobby and returning two bikes. One of the bikes was the red Fuji with a black pouch on the front. The apartment manager identified the returned bikes as two of the stolen bikes. Police recovered three additional bikes a few months later.

The defense presented no evidence at trial. In closing, Snider acknowledged that he was depicted in the surveillance videos coming and going from the short-term rental unit and in the upper garage during the burglary. He maintained, however, that he never entered the lower garage from which the bikes were stolen. The prosecutor argued that even if Snider never personally entered the lower garage, he was still guilty as an aider and abettor to his accomplices who did enter the lower garage.

## B. Procedural Background

Snider was charged with burglary of an inhabited dwelling (§§ 459, 460, subd. (a)) and grand theft (§ 487, subd. (a)). The prosecution also alleged as aggravating sentencing factors that Snider's convictions are numerous and of increasing seriousness (Cal. Rules of Court, rule 4.421(b)(2)), that he served a prior prison term (*id*., rule 4.421(b)(3)), and that he was on postrelease community supervision when he committed the current offenses (*id*., rule 4.421(b)(4)).

At the close of the prosecution case, Snider moved to dismiss all charges for insufficient evidence. (See § 1118.1.) As a defense to the burglary charge, he also argued he had "an unconditional possessory right" to the upper garage. Snider also requested that the trial court give the jury a pinpoint instruction regarding this defense. The prosecutor countered that although Samantha and her authorized guests "had a rental agreement to use the [short-term rental] unit and were provided a parking space for the *upper* . . . garage, they were not granted unconditional access to the entirety of the apartment complex including the *lower* . . . garage, which is separately locked and coded" and was "where the bikes were stolen from." The trial court confirmed that N.L.'s testimony supported the prosecutor's view. In response, Snider asked to recall N.L. because "there is some ambiguity" in his

testimony about guests' right to access the upper garage. Snider conceded, however, he was not "arguing that there is an unconditional possessory right in the [lower] garage where the bike racks [we]re located." On that basis, the trial court denied Snider's motion for acquittal, request for a pinpoint instruction, and request to recall N.L. as to the possessory-right defense. The court, however, allowed Snider "to argue ambiguity as to [N.L.]'s testimony regarding access to the lower . . . garage."

As part of his motion for acquittal, Snider also challenged the sufficiency of the evidence regarding the value of the stolen bikes for purposes of meeting the $950 grand theft threshold. The trial court denied Snider's motion, reasoning that even if "we cut [the victims'] estimates in half, the total value of the bicycles taken is still more than $950."

Snider's codefendant also moved for acquittal on the theory that the lower garage did not qualify as an inhabited dwelling.[2] In response, the prosecutor cited this court's opinion in *People v. Kasrawi* (2021) 65 Cal.App.5th 751, which held that a parking garage beneath a residential condominium complex qualifies as an inhabited dwelling. (*Id.* at pp. 764–765.) The trial court denied the motion, finding the "case law pretty clear on that."

During deliberation, the jury sent two notes requesting clarification of the charges. Snider had no objection to the trial court's responses. After deliberating for about half a day, the jury found Snider guilty of burglary and grand theft, and found that the burglary was of an inhabited dwelling.

Snider waived his right to a jury trial on the alleged aggravating sentencing factors and later admitted them.

---

[2]    It is unclear from the record whether Snider joined in this motion.

The probation officer, finding no mitigating circumstances and three aggravating circumstances, recommended that the trial court deny probation and sentence Snider to the upper term of six years for the burglary charge, and the upper term of three years on the grand theft charged (stayed under section 654).

The trial court suspended execution of a four-year prison sentence and placed Snider on Parole Reentry Court Probation for two years.

Snider appealed the judgment.

### III.  DISCUSSION

Snider's appointed appellate counsel filed a brief pursuant to *Wende*, *supra*, 25 Cal.3d 436, which summarized the facts and proceedings of the case, asserted no claims of error, and invited us to conduct an independent review of the record for prejudicial error.  Counsel identified three potential issues to assist us in our independent review:  Whether the trial court erred by denying Snider's (1) motion for acquittal under section 1118.1, (2) request for a pinpoint instruction regarding the "unconditional possessory right" defense, and (3) request to recall N.L.  Snider's appellate counsel advised him of his right to file a supplemental brief and he has not filed one.  (See *People v. Kelly* (2006) 40 Cal.4th 106, 120 [if counsel raises no claims of error, defendant has the right to file supplemental contentions].)  We have reviewed the entire record as required by *Wende* and *Anders*, and considered the issues identified by Snider's counsel.  We find no arguable issue that would result in a reversal or modification of the judgment.  Competent counsel has represented Snider on this appeal.

## IV. DISPOSITION

The judgment is affirmed.

RUBIN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DATO, J.

8